IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01298-LTB-NYW

MITCHELL F. YATER,

    Plaintiff,

v.

POWDERHORN SKI COMPANY LLC,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH**

---

Magistrate Judge Nina Y. Wang

This matter is before the court pursuant to the Motion to Quash Subpoena to Testify at a Deposition in a Civil Action ("Motion to Quash"), filed by third-party the Colorado Civil Rights Division ("CCRD"). [#30, filed November 17, 2017]. The Motion to Quash was referred to this Magistrate Judge pursuant to the Order Referring Case dated August 8, 2017 [#17] and the memorandum dated November 20, 2017 [#31]. The court heard oral argument regarding the Motion to Quash on January 11, 2018, and took the motion under advisement. After review of the Motion and associated briefing, the entire docket, and the applicable law, this court respectfully **GRANTS IN PART and DENIES IN PART** the Motion to Quash.

## BACKGROUND

Plaintiff Mitchell F. Yater ("Plaintiff" or "Mr. Yater") initiated this action on May 30, 2017, alleging retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000*e et seq.*, and the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. §§ 2434-401 *et seq.* [#1]. Mr. Yater asserts that he worked for Defendant as a regular ski-season

employee beginning in 2007, and that he was employed in the rental shop of Defendant's ski resort during the 2013-2014 ski season. [*Id.* at ¶¶ 13-14]. At that time, Mr. Yater was dating another employee, Alex Nees, who also worked in the rental shop and who was allegedly the subject of sexual harassment by their joint supervisor, Roger Roberts. [*Id*. at ¶¶ 21-22]. Mr. Roberts fired Ms. Nees in January 2014, after which Mr. Yater complained to Defendant's human resources department that Mr. Rogers terminated Ms. Nees on pretextual grounds for refusing his unwelcomed sexual advances. [*Id.* at ¶ 28]. Mr. Yater alleges that within four hours of speaking with the human resource department, a fellow employee informed him that he would be fired the following day. [*Id.* at ¶ 30]. Indeed, the next day, Mr. Roberts issued Mr. Yater a written warning for arriving at work eight minutes late and then, after Mr. Yater left the ski boot counter to assist at the short-staffed snowboard counter, Mr. Roberts presented him with an Employee Disciplinary Action that recommended termination for failure to follow instructions. [*Id.* at ¶¶ 32-36]. After meeting with the human resource department, Defendant fired Mr. Yater for insubordination and failure to follow instructions, and for his allegedly confrontational behavior during the meeting. [*Id.* at ¶ 38].

Mr. Yater filed a timely charge of retaliation with the Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC") on or about July 24, 2014. [*Id.* at ¶ 8]. The CCRD opened an investigation into the matter and assigned investigator Samuel Anderson to the file. [#30 at 2]. Mr. Anderson helped negotiate some resolution terms between the Parties, [*id.*], before the EEOC issued a Notice of Right to Sue letter on March 1, 2017. [#1 at ¶ 9]. This action followed.

In response to the Complaint, Defendant filed an Answer denying liability and asserting two counterclaims for enforcement of the settlement agreement and breach of contract. *See* [#9].

Specifically, Defendant alleges that Plaintiff made a settlement demand on or about April 24, 2015, and, following negotiations, the Parties entered into an enforceable contract to settle Plaintiff's claims on June 25, 2015. [*Id.* at 8-17]. Defendant further contends that later, on June 25, 2015, Mr. Yater "changed his mind and decided he no longer wished to settle his claims." [*Id.* at ¶ 18]. In response to the counterclaims, Mr. Yater asserts that he "neither admits nor denies the allegations" because "the allegations contain [] confidential information protected by the Colorado Dispute Resolution Act, Colo. Rev. Stat. § 1322-301, *et seq*." [#16 at ¶¶ 24-25, 28-30].

As part of discovery, Mr. Yater sought documents from the CCRD and subpoenaed Mr. Anderson to gather facts to establish that Mr. Anderson was a "mediator" under the Colorado Dispute Resolution Act, so that the Parties would be precluded from engaging in discovery into any communications made at Mr. Anderson's behest. [#30 at 3]. The CCRD produced documents pursuant to a waiver, but declined to produce its communication log based on privilege. [*Id.* at 9]. The CCRD also declined to make Mr. Anderson available for deposition, and thereafter filed the Motion to Quash. The CCRD argues that a deposition is not the least intrusive means for obtaining information from Mr. Anderson, as he has executed an affidavit averring that he has no independent recollection of the investigation and the CCRD's records are the best source of knowledge on the subject. [#30, #30-4]. It also argues that some of the information sought by Mr. Yater intrudes on the Governmental Deliberative Process Privilege, as it requires Mr. Anderson to disclose his mental impressions about the Parties' expectations of finality. [#30 at 7-8]. The CCRD further contends that to the extent Mr. Yater seeks testimony regarding the information posted on the CCRD website, Mr. Anderson is not the appropriate person to depose as he has no relevant knowledge. [#30 at 7]. The CCRD also offers to issue an

authentication of its files if so requested. [*Id.*]. Finally, the CCRD contends that the deposition creates an undue burden on the agency beyond just this case, and expresses concern that allowing the deposition "could create a precedent and have a broad effect across the hundreds of discrimination cases filed each year," such that "[t]he agency would be severely hampered in its statutory duty in timely processing administrative charges and enforcing Colorado's anti-discrimination statute." [*Id.* at 10].

Mr. Yater opposes the Motion to Quash, and argues that the deposition of Mr. Anderson is necessary to establish that "the settlement discussions that took place between April 21 and June 25, 2015 were a 'mediation' conducted by the CCRD investigator and that the proposed settlement agreement was a 'mediation communication' under the Dispute Resolution Act." [#34 at 3]. Mr. Yater enumerates a number of topics of factual testimony he seeks from Mr. Anderson, such as Mr. Anderson's customs and practices concerning informal dispute resolution; whether the settlement discussions were confidential and whether the parties were informed as to confidentiality; what Mr. Anderson told Mr. Yater about the settlement discussions and his role; whether there was a written agreement to mediate and if not, why not; how the CCRD investigator/agency handled the settlement documents; if the CCRD is a current record custodian of the settlement agreement; whether Defendant signed the settlement agreement; and whether the investigator and the agency regarded the settlement as final. [*Id.* at 3-4]. Mr. Yater contends such information is necessary to support his defenses to Defendant's two counterclaims, and that the Governmental Deliberative Process Privilege does not protect factual information and in any event the CCRD takes no steps in formally invoking such privilege. [#34 at 7]. Mr. Yater argues that the circumstances presented here are akin to those in *Giezie v. Valley Health Sys., LLC*, No. 12cv00036-ECR-GWF, 2012 WL 3929446 (D. Nev. Sept. 7, 2012), in which the court

compelled the testimony of an EEOC Investigator after the EEOC raised similar objections to the deposition.

In Reply, the CCRD argues that "Mr. Yater failed to identify areas of factual testimony that would require a CCRD investigator's testimony," [#36 at 1], and that Mr. Anderson's testimony is unnecessary with respect to each of the enumerated topics, because either Party could attest or testify to what information Mr. Anderson conveyed. [*Id.* at 2-3]. The CCRD also distinguishes this case from *Giezie*, and restates its position that permitting the deposition of Mr. Anderson will result in both an undue burden for CCRD and repercussions that will reverberate well beyond this case.

Defendant did not file a response to the Motion to Quash, but argued during the Status Conference that the pretrial deadlines set for two phases of discovery would be jeopardized should the court permit the deposition of Mr. Anderson. In particular, Defendant argued, the Scheduling Order contemplated that during the first phase of discovery the Parties would focus on whether there is an enforceable settlement agreement, and then focus during the second phase on the merits of Mr. Yater's retaliation claim. [#28]. Defendant also clarified that it does, in fact, dispute whether Mr. Anderson's involvement during the course of the CCRD investigation gave rise to a "mediation," and whether the Parties' resulting communications occurred at the behest of a mediator, such that they would be protected by the Colorado Dispute Resolution Act.

## LEGAL STANDARDS

### I.     Rule 45

A subpoena served on a third party pursuant to Rule 45 of the Federal Rules of Civil Procedure is considered discovery within the meaning of the Federal Rules of Civil Procedure. *Rice v. U.S.*, 164 F.R.D. 556, 556–57 (N.D. Okla. 1995). Accordingly, a Rule 45 subpoena must

satisfy the same standards that govern discovery between the parties, i.e., to be enforceable, it must seek information that is relevant to a party's claims or defenses, and that is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In addition, discovery conducted pursuant to a Rule 45 subpoena must be concluded by the deadline specified in the court's Scheduling Order. *Grant v. Otis Elevator Co.*, 199 F.R.D. 673, 675 (N.D. Okla. 2001); *Rice*, 164 F.R.D. at 558.

On a timely motion, the court must quash or modify a subpoena that, *inter alia*: (1) fails to allow a reasonable time to comply; (2) requires the disclosure of privileged or other protected matter, if no exception or waiver applies; (3) subjects a person to undue burden; or (4) requires the disclosure of a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(d)(3)(A), (d)(3)(B). Generally, "a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought[,]" or "upon a showing that there is a privacy interest applicable." *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) (citations omitted) ("[a]bsent a specific showing of a privilege or privacy, a court cannot quash a subpoena duces tecum"). "Objections unrelated to a claim of privilege or privacy interests are not proper bases upon which a party may quash a subpoena." *Cobbler Nevada, LLC v. Does*, No. 15-CV-02771-WYD-MEH, 2016 WL 300827, at *1 (D. Colo. Jan. 25, 2016) (citations omitted).

**II.     Rule 26(b)(1)**

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id.* In considering whether the discovery sought is proportional, the court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties'

relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*.

The scope as defined no longer includes all information "reasonably calculated to lead to admissible evidence." The amendments to Rule 26 effective December 1, 2015, purposefully removed that phrase, due to concern expressed by the Advisory Committee on the Federal Rules of Civil Procedure that use of the "reasonably calculated" phrase to define the scope of discovery "might swallow any other limitation on the scope of discovery." *See In re Bard Filters Products Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016) (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment). The applicable test is whether the evidence sought is relevant to any party's claim or defense, and proportional to the needs of the case. *Id.* Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401.

The Advisory Committee Notes to the 2015 Amendments make clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations. Advisory Comm. Notes to Fed. R. Civ. P. 26(b)(1). Generally, when discovery appears to be relevant on its face, the responding party bears the burden of establishing that the requested discovery does not come within the scope of relevant evidence, or is of such marginal relevance that the potential benefit of discovery is outweighed by the harm. *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citations omitted). But when the relevance of a discovery request or device is not apparent on the face of the request or device itself, the proponent of the discovery bears the burden of making an initial, rebuttable showing of relevance. *See Thompson*

*v. Jiffy Lube Int'l, Inc.*, No. 05–1203–WEB, 2007 WL 608343, at *8 n. 20 (D. Kan. Feb. 22, 2007).

The court may also consider the fact that the discovery sought is directed at a nonparty, and in such case, the ordinary burden imposed under Rule 26 is generally greater. *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998). The court indeed considers this heavier burden, as discussed below.

### III. Colorado Dispute Resolution Act

The Colorado Dispute Resolution Act provides, in pertinent part:

> Any party or the mediator or mediation organization in a mediation service proceeding or a dispute resolution proceeding shall not voluntarily disclose or through discovery or compulsory process be required to disclose any information concerning any mediation communication or any communication provided in confidence to the mediator or a mediation organization, unless and to the extent that:
>
> (a) All parties to the dispute resolution proceeding and the mediator consent in writing; or
>
> (b) The mediation communication reveals the intent to commit a felony, inflict bodily harm, or threaten the safety of a child under the age of eighteen years; or
>
> (c) The mediation communication is required by statute to be made public; or
>
> (d) Disclosure of the mediation communication is necessary and relevant to an action alleging willful or wanton misconduct of the mediator or mediation organization.

Colo. Rev. Stat. § 13-22-307(2). "Mediation communications" are defined as "any oral or written communication prepared or expressed for the purposes of, in the course of, or pursuant to, any mediation services *proceeding*." *Id.* at § 13-22-307(2.5) (emphasis added). The Colorado Supreme Court has been careful to explain that the definition of "mediation communication" does "not [] extend to all communications that may in some way or another be related to the mediation. Rather, 'mediation communications' are limited to those made in the

presence or at the behest of the mediator." *See Yaekle v. Andrews*, 195 P.3d 1101, 1110 (Colo. 2008) (en banc). Documents pre-dating or subsequent to the actual mediation may be covered by the confidentiality contemplated by § 13-22-307, but the *Yaekle* decision makes clear such inquiry is fact-intensive. *Id.*

## ANALYSIS

As discussed above, Rule 26 of the Federal Rules of Civil Procedure provides that a party may discover any nonprivileged matter relevant to the party's claim or defense, as long as it is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). *Larson v. Larson*, 687 F. App'x 695, 707 (10th Cir. 2017). The CCRD contends that Mr. Anderson's deposition testimony is not relevant, in some instances it is privileged, and, in all instances, it is unduly burdensome and thus not proportional to the needs of the case. The court considers first the question of relevancy, second the issue of privilege, and, finally, whether the discovery sought is proportional to the needs of the case.

I. **Relevance**

The CCRD argues that the information sought from Mr. Anderson is not relevant to "whether the parties had a binding settlement agreement through the CCRD process, as facilitated by investigator Mr. Anderson." [#30 at 2]. The Parties vigorously dispute whether the conciliation conducted by Mr. Anderson constituted a "mediation" under the Colorado Dispute Resolution Act. Mr. Yater insists that the CCRD process was a mediation, and thus any statements made during the course of the mediation or at the behest of the mediator are

9

privileged and inadmissible in this action. Defendant contends that Mr. Yater's statements and actions within the CCRD process are not covered by the Colorado Dispute Resolution Act.[1]

The Colorado Dispute Resolution Act defines mediation as "an intervention in dispute negotiations by a trained neutral third party with the purpose of assisting the parties to reach their own solution." Colo. Rev. Stat. § 13-22-302(2.4). A mediation communication is defined as:

> any oral or written communication prepared or expressed for the purposes of, in the course of, or pursuant to, any mediation service proceeding or dispute resolution program proceeding, including, but not limited to, any memoranda, notes, records, or work product of a mediator, mediation organization, or party; except that a written agreement to enter into a mediation service proceeding or dispute resolution proceeding, or a final written agreement reached as a result of a mediation service proceeding or dispute resolution proceeding, which has been fully executed, is not a mediation communication unless otherwise agreed upon by the parties.

*Id.* at § 13-22-302(2.5). A mediator is defined as "a trained individual who assists disputants to reach a mutually acceptable resolution of their disputes by identifying and evaluating alternatives." The Tenth Circuit recognizes that the Act "protects as confidential" mediation communications that are "made in the presence or at the behest of the mediator. *Larson*, 687 F. App'x at 706. The Act further sets forth the requirements for rendering a settlement agreement judicially enforceable:

> If the parties involved in a dispute reach a full or partial agreement, the agreement upon request of the parties shall be reduced to writing and approved by the parties and their attorneys, if any. If reduced to writing and signed by the parties, the agreement may be presented to the court by any party or their attorneys, if any, as a stipulation and, if approved by the court, shall be enforceable as an order of the court.

---

[1] Defendant does not articulate precisely why it believes the Colorado Dispute Resolution Act does not apply, *e.g.*, that the CCRD process does not constitute a "mediation" under the statute, or that the statements attributable to Mr. Yater were not made at the behest of the mediator. For the purposes of the Motion to Quash, Defendant's theory is immaterial to the court's order.

*Yaekle*, 169 P.3d at 198 (citing Colo. Rev. Stat. § 13-33308(1)). *See also GSL of ILL, LLC v. Kroskob*, No. 11-CV-00939-WYD-KMT, 2012 WL 10311, at *4 (D. Colo. Jan. 3, 2012); *Sun River Energy, Inc. v. Nelson*, Civil Action No. 11–cv–00198–MSK–MEH, 2011 WL 3924973, at *4 (D.Colo. Sept. 7, 2011.) (discussing instances in which parties can enter a binding settlement agreement under the Colorado Dispute Resolution Act).

In reviewing the topics for deposition as identified by Plaintiff, this court concludes that most of the topics are directed at factual issues that are relevant to the question of whether the communications and actions undertaken by the Parties in conjunction with Mr. Anderson are entitled to protection under the Colorado Dispute Resolution Act. However, certain topics stray from the facts into areas of legal conclusion, *e.g.*, were the settlement discussions "confidential," and into areas outside of Mr. Anderson's personal knowledge, *e.g.*, whether "the agency" insisted that all settlement documents go through the investigator/agency and did "the agency" regard the settlement as final. Mr. Anderson is subpoenaed as an individual witness, not as an expert witness or a Rule 30(b)(6) deponent for the agency. Therefore, any deposition of Mr. Anderson must be limited to his personal recollection of the factual circumstances of the conciliation efforts, *e.g.*, his statements to the Parties regarding confidentiality or the policy or practice of the CCRD with respect to settlement agreements.

## II.     Privileges

*Deliberative Process Privilege*. The court next considers the applicability of the "Governmental Deliberative Process privilege" asserted by the CCRD.[2] By filing a Title VII complaint, Mr. Yater invoked the court's subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. [#1 at ¶ 4]. However, he also pled that the court has supplemental jurisdiction over

---

[2] Though not entirely clear, it appears from the citations the CCRD uses that it is invoking the federal deliberative process privilege. *See* [#30 at 7-8].

11

his CADA claim. [*Id.* at ¶ 5]. Each of Defendant's counterclaims arise under state common law. *See* [#9]. Generally, federal common law governs privilege in a case that arises under federal question jurisdiction. Fed. R. Evid. 501. However, the Tenth Circuit has held that in cases involving both federal and state causes of action, "a federal court should look to state law in deciding privilege questions" for the state law claims. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995) (citing Fed. R. Evid. 501; *White v. American Airlines, Inc.*, 915 F.2d 1414, 1424 (10th Cir. 1990)). *But see* Notes of Committee on Judiciary, Senate Report 93-1277 (observing that "[b]asically, [the Rule] provides that in criminal and Federal question civil cases, federally evolved rules on privilege should apply since it is Federal policy which is being enforced. [It is also intended that the Federal law of privileges should be applied with respect to pendant State law claims when they arise in a Federal question case.]"); *Vondrak v. City of Las Cruces*, 760 F. Supp. 2d 1170 (D.N.M. 2009) (holding that federal privilege law applies to both federal and state law claims when subject matter jurisdiction is premised on a federal question); *Joyce v. N. Metro Task Force*, No. 10-CV-00649-CMA-MJW, 2011 WL 1884618, at *3 (D. Colo. May 18, 2011) (same).

Under Colorado common law, the deliberative process privilege is a qualified privilege. "The primary purpose of the privilege is to protect the frank exchange of ideas and opinions critical to the government's decisionmaking process where disclosure would discourage such discussion in the future." *City of Colorado Springs v. White*, 967 P.2d 1042, 1051 (Colo. 1998) (en banc). The Colorado Supreme Court went on to explain: "[t]hus, a key question in a deliberative process privilege case is whether disclosure of the material would expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* The federal privilege

is similar; the deliberative process privilege "covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 2, 121 S. Ct. 1060, 1062, 149 L. Ed. 2d 87 (2001) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29) (1975)). As with all privileges, the court narrowly construes the deliberative process privilege. *Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D. 632, 636 (D. Colo. 2012) (citing *Everitt v. Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo. 1990)). "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The burden of establishing the applicability of the privilege lies with the CCRD. *Motley*, 71 F.3d at 1550; *Alcon v. Spicer*, 113 P.3d 735, 739 (Colo. 2005).

In applying these concepts, and regardless of whether federal or state privilege law applies, this court finds (and the CCRD implicitly acknowledges through its argument) that the deliberative process privilege does not bar most of the testimony identified in Plaintiff's Opposition to the Motion to Quash. *See* [#34 at 3-4]. The deliberative process privilege does not protect purely factual or investigative matters. *See S.E.C. v. Nacchio*, No. CIV.A.05-CV-00480-MSK-CBS, 2009 WL 211511, at *3 (D. Colo. Jan. 29, 2009), *aff'd*, 704 F. Supp. 2d 1099 (D. Colo. 2010) (citing *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1227 (10th Cir. 2007)). The conversations between the CCRD investigator and the Parties do not reflect any pre-decision deliberation of the agency or the investigator, and the inquiries into Mr. Anderson's job responsibilities as a CCRD investigator and his training do not implicate any deliberation on the

13

part of the agency. The CCRD's concerns focus on the last topic, i.e., did the investigator regard the settlement as final.³ [#30 at 79].

This court is not persuaded that the investigator's impression as to whether a final settlement was reached is deliberative, as contemplated by the federal or state privilege. First, Mr. Anderson's affidavit provides no explanation as to how his impressions regarding the Parties' conciliation efforts reflect his own (or the agency's) process in determining how to proceed with a CCRD investigation or what final decision to render. Indeed, this court is hard-pressed, based on the record before it, to understand how Mr. Anderson's mental impression of a process between the Parties reflects the agency's decision-making process at all. Nor is it clear that Mr. Anderson's testimony as to whether he believed the settlement agreement to be final somehow reflects a *pre-decision* deliberation regarding an issue or agency policy. Accordingly, this court concludes that the deliberative process privilege simply does not apply in this instance.

***Work Product.*** It appears that the CCRD has withheld a communication log on the basis that it contains work product. [#30 at 9]. The court's review of both the subpoena and Plaintiff's Opposition to the Motion to Quash finds that Mr. Yater no longer seeks that information. *See* [#30-1; #34]. Accordingly, this court has no basis on which to conclude that the CCRD's invocation of the work product doctrine to protect a communications log that was withheld from production is improper, and the Motion to Quash will be granted as to the communication log.

**III.    Undue Burden**

Having concluded that the majority of the topics are relevant and the deliberative process privilege does not apply, the court now turns to whether the discovery sought is proportional to the needs of the case. The CCRD represents that it has produced its non-privileged records per

---

³ The court previously found that "the agency's" impression of whether the settlement was final is not an appropriate topic for testimony by Mr. Anderson.

the Parties' agreement and insists that those records "are the best source of non-privileged factual information in CCRD's possession, not Mr. Anderson himself." [#30 at 6]. In his affidavit, Mr. Anderson sets out his employment history at the CCRD, his current duties, and his training in mediation, and similarly opines that "the best source of information about the Yater discrimination charge is the file materials." [#30-4]. Respectfully, Mr. Anderson's opinion and the CCRD's position as to the "best source" of information sought by Mr. Yater are not dispositive.

The Federal Rules of Civil Procedure do not limit parties to the use of one discovery vehicle to obtain relevant and proportional information in a case. It is long standing and well-settled that methods of discovery are complementary, rather than alternative or exclusive. *See Gonzales v. City of Albuquerque*, No. CIV 09-0520 JB/RLP, 2010 WL 553308, at *8 (D.N.M. Feb. 9, 2010); *Stonybrook Tenants Ass'n, Inc. v. Alpert*, 29 F.R.D. 165, 167 (D. Conn. 1961). Indeed, the Rules make clear that "the <u>methods</u> of discovery may be used in any sequence." Fed. R. Civ. P. 26(d)(3). These complimentary methods are important to the country's adversarial system, in that they allow parties to develop the facts surrounding a matter in a "quest for truth." *See Fed. Deposit Ins. Corp. v. Daily*, 973 F.2d 1525, 1529-30 (10th Cir.1991). In light of these principles, this court is not persuaded that the affidavit is an adequate substitute for deposition testimony from Mr. Anderson. While the CCRD insists that the information that Mr. Yater seeks is available either by Mr. Anderson's deposition or the CCRD record already produced, the CCRD does not point to specific evidence that responds to Mr. Yater's topics with particularity. For instance, the CCRD fails to point to any writings or recordings of Mr. Anderson's conversations with the respective Parties, or written scripts as to the advisements by Mr. Anderson to the Parties about the conciliation process. Mr. Anderson's affidavit does not detail

the procedures he personally utilized in attempting to settle cases that he was investigating, nor does it provide any particular facts as to what he generally told parties. And the CCRD's responses contained in the Reply are, at their core, attorney argument, not assertions or admissions of fact. Even Mr. Anderson's statements regarding his mediation training provide only the most basic information that may or may not be sufficient to make a determination as to whether Mr. Anderson qualifies as a "trained" mediator under the Colorado Dispute Resolution Act. There is also no indication that the CCRD has produced documents reflecting Mr. Anderson's job responsibilities between July 28, 2014 and September 29, 2015. And to the extent Mr. Anderson attests that he has no independent memory of the Yater investigation, a deposition provides an opportunity to attempt to refresh Mr. Anderson's recollection.

The most compelling argument, and one this court is particularly mindful of, is the "serious and legitimate concern" that public agency resources would be commandeered by private litigants, and that allowing the deposition of a CCRD investigator would have an unintended ripple effect outside this litigation. [#30 at 9-10; #37 at 8-9]. As discussed above, when a subpoena is served on a non-party, the burden is higher. But even with this higher burden, and even considering the potential impact upon the limited resources of a government agency, the issue of whether conciliation efforts undertaken by a CCRD investigator are covered by the Colorado Dispute Resolution Act is significant, and indeed potentially dispositive of this litigation. Even if Mr. Yater and representatives of Defendant can testify as to what occurred, Mr. Anderson is an important neutral party who can provide information regarding his background, training, and the custom and practices of the CCRD's conciliation efforts. This court is also not persuaded that Mr. Yater can discover this information from other sources, And while this court is sensitive to the demands upon a public agency and its ability to function, the

court is not struck that the present issue is one that litigants will repeatedly raise in other lawsuits. Indeed, the briefs do not cite, and the court could not independently find, any cases that analyze whether efforts made through a CCRD investigation constitute "mediation" under the Colorado Dispute Resolution Act. This court is inclined to believe that once the issue is decided, either by the Honorable Lewis T. Babcock or by another judicial officer, it likely will not be re-litigated again and again. Nevertheless, in recognition of the burdens a deposition may place on a public employee, the court will limit the deposition to two hours, to be completed in the next thirty days.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Motion to Quash Subpoena to Testify at a Deposition in a Civil Action filed by third-party the Colorado Civil Rights Division [#30] is **GRANTED IN PART and DENIED IN PART**; and

(2) Plaintiff is permitted to take a deposition of Samuel Anderson, CCRD Investigator, of **no more than two hours** no later than **March 2, 2018, limited to the factual topics set forth in Plaintiff's Opposition to the Motion to Quash [#34 at 3-4] except topics excluded by this Order.**

DATED: February 8, 2018                 BY THE COURT:

                                                   s/ Nina Y. Wang
                                                   United States Magistrate Judge